Good morning, ladies. Katherine Young, Deputy Federal Public Defender for Appellant Enrique Oropeza. Mr. Oropeza is appealing the District Court's denial of his motion to suppress a firearm which was discovered during a warrantless and unconsented search of his residence. At the time of the search, Mr. Oropeza was in another location, not even at the residence. The District Court said that the shotgun was not seized pursuant to a consensual search, which was the government's theory below. The District Court instead said, after the evidence was closed, that the shotgun was seized under the doctrine of exigent circumstances because Mr. Oropeza was capable of being released within four hours and returning home to harm his wife. At the time, Mr. Oropeza was in a remote location about to be arrested by the police. But did he live in the house? Excuse me? Didn't he live in the house? Yes, he did. And hadn't his wife just told the police that he had assaulted her brandishing a firearm? Yes, she had. So couldn't the police be reasonably concerned that he could come back and, if that tale were true, that he had assaulted her with a firearm in his hand, that if he came back and he had a rifle in the closet, that she was in danger? Why isn't that reasonable for the police to view that as an exigent circumstance? Because the evidence was that he could not return for at least four hours. He was about to be taken into custody. It would take him at least four, or about four hours, to bond out. That gives the police four hours in which to obtain a warrant. How could you get a warrant for that? I'm not clear. Well, under the facts of this case, the officer would, there's a telephonic warrant statute in California. You mean what? A warrant to what's probable cause to believe that what crime was committed, that domestic violence was committed, and to seize the warrant, to seize the shotgun? I think at the time, Officer Van Meter had been informed that there had been an altercation and that the defendant was carrying a weapon. And so Officer Van Meter could have said that he had suspected domestic violence, he was looking for a weapon, he wanted a search warrant to look for a weapon. She said it was a handgun, though, I thought. Yes, she did say that it was a handgun. So, but presumably he could have looked throughout the residence for the handgun if the evidence, the state of the evidence at that time was  I'm not absolutely certain he can't get back there for four hours. That's the state of the evidence. That was Van Meter's testimony. And that was the district court's finding as well, that he could not return or he would have taken about at least or about four hours to return home after he was arrested by the police. Is it certain a policeman could get a warrant in four hours? Well, that's the problem with the exigent circumstances exception, because since the government wasn't relying on it below, it appeared, the district court raised it after the conclusion of evidence, there was no evidence introduced by the government and it's their burden. It's their burden to prove by particularized evidence, and they have a heavy burden under this Court's authorities to prove that a warrant could not have been obtained in time to prevent the anticipated harm. And in this case, the government introduced no evidence because they weren't relying upon that theory at the time that the evidence was introduced. So the government simply hasn't met its burden. And in fact, as we see from the government's briefing on appeal, they're not even really relying on that theory anymore. They don't discuss it. Instead, now they're saying that there's an emergency exception, which is more applicable. But the emergency exception suffers from the same fatal defects, which is that there was no emergency. Mr. Oropesa was about to be taken into custody. He was at a remote location. The state of the evidence, the testimony of Van Meter, the findings of fact by the district court were that he would be in custody for at least four hours before he could be bonded out. And therefore, there was no emergency. But why is it not, why does the four hours negate an emergency? So he's there for four hours, then he comes back, and he grabs his shotgun and shoots his wife if the police is, if they're wrong. Because an emergency requires an immediate threat to life or property. In one of these, this court's authorities, in the Alvarez case, where this court was dealing with an exigent circumstances exception, the court said 90 minutes is enough time to go get a warrant. And in this case, four hours clearly means that there wasn't an emergency. There wasn't an immediate threat to life or property. There was four hours before Mr. Oropesa could return home. And I thought there were three prongs to the test. Yes. One, police must have reasonable grounds to think there's an emergency, and immediate need for their assistance to protect life or property. Yes, there are three prongs, and. First and second, that the search has to be primarily motivated to not primarily motivated to arrest and seize evidence. I guess primarily motivated to protect somebody. And third, there has to be a reasonable basis to associate the emergency with the area that's searched. So I guess you're on the first prong. Are you saying that the police didn't have reasonable grounds to think there's an emergency and an immediate need for them to get the shotgun out of there? Well, absolutely, Your Honor. And the Deamer case, which was cited in the 28-G letter, suggests how narrowly this court is going to construe. Deamer was dealing with the third prong, but it indicates that all three prongs must be satisfied in order for there to be an emergency. First of all, there was no emergency because there was no immediate need for police assistance to protect life or property. Ms. Oropesa was in the home alone. Mr. Oropesa was about to be taken into custody at another location. And I also think that the second prong is not satisfied because there wasn't a sufficient factual record developed below, because they weren't dealing with this issue below. And Van Meter did testify that he took the weapon into custody for the protection. But I assume that another reason may also have been, had it been factually developed below, that he was looking for evidence that might become relevant in a subsequent criminal prosecution. So I think it's clear that there was no emergency, but it's possible also that the second prong was not satisfied because the factual record simply wasn't developed below. That gets back to my question about whether he could have gotten a warrant at all. If he's not looking for evidence of a crime, but is just trying to find the gun so that when the guy comes back, he can't use it on the wife, can you get a warrant for that? Well, in this case, he had to be convicted of a crime, and that there's going to be evidence of a crime or contraband or something. I don't know how you could get a warrant to seize the gun for protection. Well, she had said that he had, his wife had said that he had brandished the gun at her, and the officer observed some blood inside her nose. So there was evidence of an altercation. She said he had brandished the weapon at her. He had fled the family residence with an infant child, possibly carrying a weapon. I think all of those would give rise to some concern. He was not carrying a shotgun, and he hadn't brandished a shotgun. No, it was a handgun, but once they found the shotgun, I think the shotgun in itself was illegal because it was a... I understand that, but how could they get a warrant to, you know, he said, my shotgun's in the closet. The question is, can they get a warrant to go look in that closet to get the shotgun? Not can they get a warrant for something else, really, I would think. You seem to be arguing that they could get a general warrant to look for the handgun that his spouse said, and gee, when they're looking for the handgun, they might just go get the shotgun. Well, I think they would... It sounds just, you know, I don't know, it's circuitous and it's not direct, and if they did that, you would be able to challenge that. I mean, the direct question is, can they go get a warrant to get the shotgun? Well, after Mr. Oropesa said that there was a shotgun, I assume they could have gotten his record and found that there... Or can they go just get... Mr. Oropesa has been convicted of domestic violence. The fact that he has a shotgun in his possession is an additional crime. When he says, I have a shotgun in the closet, why isn't that sufficient probable cause to go get the shotgun in the closet and get it out of there right away? Well, he admits it. He says right here in his affidavit, Declaration of Support of the Motion, I did tell Officer Van Meter that there was a gun in the closet. And later, at a suppression hearing, he says the officer got on the phone and asked me, where's the gun? And I go, what gun? Then I go, I remembered, I go, oh, shit, there's a gun in the closet. And I hanged up the telephone. Now, why isn't that, with knowledge that he's a prior convicted domestic abuser, sufficient for Officer Van Meter to go right to the house and get the gun in the closet? End of story. Well, at the time, Officer Van Meter was unaware of his record. Oh, there's no issue about that? There's no issue about that. Did you want to save a minute or something? Yes, I did, Your Honor. Thank you. May it please the Court, Fred Rowley, Criminal Appeals Section for the Government. Officer Van Meter reasonably believed that the shotgun in this case presented an ongoing danger to the Oropesa family, and that he needed to find and take that gun in order to ensure their continued safety. To address Judge Bathe's point about the warrant and the state of the officer's knowledge, at the time he took the gun, the district court specifically asked the officer whether he knew at the time that he took the gun that this defendant had a prior misdemeanor conviction for spousal abuse, and the officer said no. The district court actually also asked the officer whether he had reason to believe this defendant was a felon, which I don't think he is, and the officer said no. The officer found out about the outstanding warrant and the prior conviction at the station house. That is the testimony below. And to address Judge Silverman's point about getting a warrant, as the government argued in its brief, there wouldn't have been a basis to get a warrant to take that shotgun. Although it looks, it appears that the shotgun was a short-barreled weapon, the defendant didn't tell the officer that. The defendant just said that there was a shotgun in his closet. So the officer had no reason to think at the time he learned about the shotgun's existence that possessing the shotgun was a crime. And that's critical. And that's precisely why the emergency exception applies here in non-aggregate circumstances. So I guess the crux of it then, in part at least, and it seems to me that the heart of it, based on Appellant's argument and your argument, is, okay, he's got a reason to think the woman may be in danger from her husband if there's a shotgun in the closet. So then it kind of comes down to, well, does he have to go get a warrant? Can he get a warrant to get that shotgun? Or does he have to go grab the shotgun and search then to be safe? Well, that's right, Your Honor. If there was probable cause at that time to believe that possessing that shotgun was a crime, then the government could conceivably rely on the... As I understand your argument and Appellant's argument, nobody knows that he's a felon right then or that he's had domestic abuse rather conviction. So no one knows it's a crime for him to have a shotgun in the closet. That's right. The reason there's a kind of a concern or an impetus to get that shotgun is because the woman's got blood on her nose and says that, I was threatened with a handgun. So it looks like you've got a violent marital situation there where a shotgun could be quite dangerous. Well, that's right, Your Honor. And it's for that reason, it's the specificity of the threat that makes the four hour gap that's in the record, that makes it so that the threat doesn't evade, that made it reasonable for the officer to think that notwithstanding the fact that this defendant would not return for four hours, that leaving the shotgun there would present an ongoing danger to Ms. Oropesa and to the family. The defendant had demonstrated a willingness to use a gun to threaten his wife, although it turned out later that Ms. Oropesa wasn't telling the truth to the officer. At that time, the officer was told that she had, that the defendant had brandished a gun at his wife. There was every reason for him to expect that if he left the shotgun there, it could conceivably be used even after four hours. And the cases note that in the domestic violence context, tempers flare and they focus on the fact that there's got to be a cooling off period. And on this record, on these facts, it's reasonable for the officer to think that four hours was not enough. There was even evidence that there had been an altercation, an actual altercation, because there was blood underneath her nose. So four hours that you're talking about is the time it would take to get a warrant? That's right, Your Honor. Is the record, is that something the judge said or is there evidence about that? There is, Your Honor. Officer Van Meter actually testified. Van Meter said. Yes, Your Honor. And that was, I believe, also cited in the district court's order. But the basis for that was testimony by the officer, unrebutted testimony that in a domestic violence case, typically the defendant will bail out in four hours. Are there any probable cause, exigent circumstance cases, you know, dealing with those two issues in the Ninth Circuit or the Supreme Court that are focused specifically on Is Your Honor focusing on the four hour gap? No, I just want to know if if the Ninth Circuit or the Supreme Court have addressed probable cause and exigent circumstances in the specific context of domestic, the problems of domestic violence. Your Honor, I don't recall any. In Cervantes, this court, it wasn't a domestic violence case. It was the officer was concerned for the safety of other people because he thought there might be a drug lab in an apartment. But that case actually did discuss the differences between exigent circumstances and the emergency exception. But my question is really focusing on whether those issues or the emergency exception, any of these issues, whether they've been treated by our court in the specific context of domestic violence. I don't think so. Domestic violence is a different kind of a crime than, you know, drug possession or bank robbery, because it often is repeated. Often the victims don't talk about it. And there's just some special elements to domestic violence that might affect some of these issues. I believe that's right, Your Honor. In fact, that's why the district court, Judge Taylor below, actually sought supplemental briefing to review the record. The judge is thinking aloud and asked, well, there's got to be some kind of an emergency exception for circumstances like this where the officer is acting not out of a law enforcement concern, not for a law enforcement purpose, such as collecting evidence, but out of a public safety concern. And the judge, in fact, was right. And the government's briefing actually cited a clear emergency exception case. That's the Raines case. What limits are there on what the officer could have done?  Your Honor, on this record, I don't think so, because the officer wouldn't have any basis to think that looking in a kitchen drawer would have actually addressed the specific threat that he was aware about. He had been told that the defendant had brandished a gun at his wife, and the emergency exception test states that the officer has to have something approximating probable cause to look in the places where, yes, Your Honor? With respect to the emergency, wasn't the emergency diffused as long as the officer was on the scene? Couldn't he have just stayed there for four hours or however long it took until a warrant was procured? Well, Your Honor, I don't believe that he could have gotten a warrant. That's that's really the problem here. I don't think that there's any way that he could have justified a seizure of the gun, because at the time he's making this decision. There was a report that the woman says a gun was used to threaten. A handgun, Your Honor. A handgun. So a gun was used, right? There's a confession or an admission by the defendant that there's a shotgun in his closet, and he's a little bit worried about it because that's what the exclusive tells us, right? Yes, Your Honor. And that isn't enough to get a warrant where there's been a complaint of domestic abuse, to get a warrant to remove the gun from the house? Well, Your Honor, I don't, you know, I don't practice on the state side. And as, and as Judge Gould pointed out, domestic violence cases will typically come up, you know, in state cases and not in federal cases because, you know, the FBI doesn't. As an old telephone answer on emergency protective orders, we would have given an emergency protective order in New York minutes. Well, Your Honor, the problem is I don't think that there is a reasonable basis to associate that shotgun with any specific criminal activity. He doesn't know at that time that it's a short-barreled rifle. He don't use one kind of gun on his wife. He wouldn't use another gun out of some unexplained sense of decorum? Your Honor, Your Honor, the crime would have been brandishing the handgun. If there was any crime at all, it would have been, I suppose, brandishing the handgun. And the shotgun, I don't think, would have been evidence of that crime. Now, what Your Honor is getting at is that the shotgun does present a danger, and that's exactly right. But the officer's justification. It's not a danger as long as Van Meter's in the house. Yes, Your Honor, but I think that an officer need not stay in a house for. To prevent a crime? Well, Your Honor, he would have to, you know, he could conceivably have to stay in the house longer than four hours. Can't he call his station house and say, get me a warrant, this is the situation? I mean, he's in communication with his station house, isn't he? He is, Your Honor. But again, I don't think that he would have been able to obtain a warrant simply because there was no basis to associate the shotgun with any criminal activity. Now, had he known, for example, that it was a short-barreled rifle, he would have. Had he known at that time that this defendant had a prior misdemeanor conviction for spousal abuse, he would have. What you're really saying is that the emergency doctor is an exception to the probable cause requirement rather than an exception to the warrant requirement. That's right, Your Honor. That's exactly right. And I think that Cervantes actually discusses that. It's for precisely that reason that we don't require officers to articulate their basis in emergency cases for suspecting that criminal activity is afoot because that's not the officer's purpose. And indeed, in this case, he couldn't have articulated those facts. He was not acting out of that concern. And that's why the emergency exception is a fairly narrow doctrine. You've got that requirement that the officer subjectively act out of concern for others and not act out of a law enforcement purpose. That delimits the scope of the exception. Mr. Raleigh, thank you very much. Thank you. Ms. Young, you have the last of your time left. Thank you. I want to briefly address two issues. The first was the issue of whether the domestic – perhaps this isn't a domestic violence context and in any way implicates or takes it out of Fourth Amendment analysis. That was a concern that the district court had. And as the district court asked for supplemental briefing, and the government and the defense submitted supplemental briefing on the issue, and the government's supplemental briefing discusses the California statute dealing with seizure of weapons during domestic violence incidents, and that seizure can only take place under Fourth Amendment circumstances. And the government's brief says, this language seems to suggest that the penal code section does not take such a domestic violence situation outside Fourth Amendment analysis. So both parties – I'm not sure that Fourth Amendment would apply. It's just a question whether, you know, how the standards get applied in this setting. Well, that was another point that I wanted to go to, Your Honor, is that it's clear that under the facts, the specific test of the emergency exception, that there simply wasn't an immediate threat to life or property. And the fact that whether the officer could have gotten a warrant, it's not – it's not an element of the test, but as has been discussed, the fact is that had the officer run a check on Mr. Orpez's record, and when he went back to the station to get the warrant, he would have found out that there was reason to seize the shotgun. And so it's the defendant's contention that the motion to suppress should have been granted. Thank you. Thank you. Thank you, Ms. Raleigh, as well, for the case you just submitted. 0056150, United States v. Embrique, is submitted on the briefs. The final case to be argued, then, is 0256566, Ventura Mobile Home Communities Owners Association v. the City of San Buenaventura. Each side has 20 minutes. Good morning.
judges: Silverman, Gould, Bea